## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRI-ISO TRYLINE, LLC, individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff,* | |
| vs. | |
| BASF CORP.; BASF SE.; BAYER AG; BAYER CORP.; COVESTRO AG; COVESTRO LLC; DOWDUPONT INC.; DOW CHEMICAL CO.; HUNTSMAN CORP.; HUNTSMAN INTERNATIONAL LLC.; MCNS POLYURETHANES USA INC.; MITSUI CHEMICALS, INC.; MITSUI CHEMICALS AMERICA, INC.; MITSUI CHEMICALS & SKC POLYURETHANES, INC.; WANHUA CHEMICAL GROUP CO., LTD.; WANHUA CHEMICAL (AMERICA) CO. LTD.; and WANHUA CHEMICAL US HOLDING, INC., | |
| *Defendants.* | |

### CLASS ACTION COMPLAINT

Steven N. Williams
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940
*swilliams@saverilawfirm.com*

*Attorneys for Plaintiff and the Proposed Class*

*Additional Attorneys Listed in Signature Block*

Plaintiff, Tri-iso Tryline, LLC ("Plaintiff" or "Tri-iso") alleges as follows:

## I.  LOCAL CIVIL RULE 10.1 STATEMENT

1.     The mailing addresses of the Parties to this action are as follows:

Tri-iso Tryline, LLC
2187 Newcastle Ave., #101, Cardiff by the Sea, California 92007

BASF Corp.
Address:  100 Park Avenue, Florham Park, New Jersey 07932

BASF SE
Address:  Carl-Bosch-Str. 38, 67056 Ludwigshafen, Germany

Bayer AG
Address:  Werk Leverkusen, 51368 Leverkusen, Germany

Bayer Corp
Address:  100 Bayer Blvd., Whippany, New Jersey 07981

Covestro AG
Address:  Kaiser-Wilhelm-Allee 60, 51373 Leverkusen, Germany

Covestro LLC
Address:  1 Covestro Cir., Pittsburgh, Pennsylvania 15205

DowDuPont Inc.
Address:  2030 Dow Center, Midland, Michigan 48674

Dow Chemical Co.
Address:  2030 Dow Center, Midland, Michigan 48674

Huntsman Corp.
Address:  10003 Woodloch Forest Dr., The Woodlands, Texas 77380

CLASS ACTION COMPLAINT

Huntsman International LLC
Address:  10003 Woodloch Forest Dr., The Woodlands, Texas 77380

Mitsui Chemicals, Inc.
Address:  Shiodome City Center, 1-5-2 Higashi-Shimbashi, Minato-ku, Tokyo, Japan

Mitsui Chemicals America, Inc.
Address:  800 Westchester Ave., Suite S306, Rye Brook, New York 10573

Mitsui Chemicals & SKC Polyurethanes, Inc.
Address:  17F-A, Kyobo Tower, 465, Gangnam-daero, Seocho-Gu, Seoul, Korea

MCNS Polyurethanes USA, Inc.
Address:  1 SKC Drive, Covington, Georgia 30014

Wanhua Chemical Group Co., Ltd.
Address:  No. 17, Tianshan Rd, YEDA, Yantai, 264006, China

Wanhua Chemical (America) Co. Ltd
Address:  3803 West Chester Pike, Suite 240, Newtown Square, Pennsylvania 19073

Wanhua Chemical US Holding, Inc.
Address:  Two Eldridge Place, 757 N. Eldridge Parkway, Suite 560, Houston, Texas 77079

## II. <u>NATURE OF THE ACTION</u>

1.      Plaintiff Tri-iso Tryline, an LLC registered in Washington State with its principal place of business in Cardiff by the Sea, California brings this Complaint on behalf of itself and all others similarly situated to redress Defendants' violation of the United States antitrust laws.

CLASS ACTION COMPLAINT

2.      Plaintiff seeks treble damages, attorneys' fees, litigation expenses, and injunctive relief under Sections 1 and 3 of the Sherman Act ("Sherman Act") and Sections 4 and 16 of the Clayton Act ("Clayton Act"). *See* 15 U.S.C. §§ 1 and 3; 15 U.S.C. §§ 15 and 26.

3.      As alleged in more detail below, Defendants conspired to fix the prices of methylene diphenyl diisocyanate ("MDI") and toluene diisocyanate ("TDI"). MDI and TDI are the primary chemicals used in the manufacture of polyurethane-based products and are referred to in the polyurethane industry as Isocyanates. Defendants implemented these agreements by, *inter alia*, limiting supply through coordinated and pretextual manufacturing shutdowns.

4.      Defendants' conspiracy artificially raised and maintained prices for Isocyanates, which caused antitrust injury to Plaintiff and Class Members who paid higher prices for Isocyanates than they would have in the absence of Defendants' conduct. Defendants collusive conduct started as early as 2015 and has continued through the present (the "Class Period").

5.      The United States Department of Justice ("DOJ") is investigating Defendants' collusive conduct in the Isocyanates market. Three Defendants (Dow, BASF, and Bayer) are repeat offenders of the antitrust laws and have been the subjects

CLASS ACTION COMPLAINT

of previous criminal and civil, including unlawfully conspiring to fix the prices of polyurethanes from the late 1990s to the early 2000s.

## III.    JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction. Defendants engaged in conduct both within and outside the United States that caused direct, substantial, and reasonably foreseeable anticompetitive effects on interstate commerce within the United States.  *See* 15 U.S.C. §§ 15(a) and 26; and 28 U.S.C. §§ 1331 and 1337.

7.    Venue is proper in this district. A substantial part of the events giving rise to Plaintiff's claims occurred within this district and much of the affected interstate trade and commerce was transacted here. Moreover, one or more Defendants are located and regularly conduct business in this district.  *See* 15 U.S.C. §§ 15(a) and 22; 28 U.S.C. §§ 1391 (b) and (c).

8.    This Court has personal jurisdiction. Each Defendant did the following: (a) conducted business in the United States and within this District; (b) directly or indirectly sold or marketed Isocyanates throughout the United States and in this District; (c) had substantial contacts in the United States and within this District; or (d) engaged in a price-fixing conspiracy that had a reasonably foreseeable effect of causing injury to the business or property of persons and entities located in the United States and within this District.

CLASS ACTION COMPLAINT

## IV.    THE PARTIES

### a.    Plaintiff

9.    Tri-iso is a Washington LLC with its principal place of business at 2187 Newcastle Ave., #101, Cardiff by the Sea, California 92007.

10.    Tri-iso purchased Isocyanates directly from one or more Defendants during the Class Period and was injured as a result of the antitrust violations alleged in this Complaint.

11.    Tri-iso brings this action on behalf of itself and a class of all similarly situated individuals and business.

### b.    Defendants

#### 1.    The BASF Defendants[1]

12.    BASF Corp. is a Delaware corporation headquartered at 100 Park Ave., Florham Park, New Jersey. BASF Corp. is a subsidiary of BASF SE. During the Class Period, BASF Corp. manufactured, marketed, and sold Isocyanates in the United States, directly and through its affiliates and subsidiaries, during the Class Period.

13.    BASF SE is a German corporation headquartered at Carl-Bosch-Str. 38, 67056 Ludwigshafen, Germany. BASF SE manufactured, marketed, and sold

---

[1]    BASF SE and BASF Corp. are referred to as the "BASF Defendants" or "BASF."

CLASS ACTION COMPLAINT

Isocyanates in the United States, directly and through its affiliates and subsidiaries, during the Class Period.

### 2.    The BAYER Defendants[2]

14.    Bayer AG is a German corporation with its principal place of business in Werk Leverkusen, 51368 Leverkusen, Germany. Bayer AG manufactured, marketed and sold Isocyanates in the United States, directly and through its affiliates and subsidiaries, during the Class Period.

15.    Bayer Corp. is a Delaware corporation located at 100 Bayer Blvd., Whippany, New Jersey. Bayer Corp. is a subsidiary of Bayer AG. Bayer Corp. made, marketed, and sold Isocyanates in the United States, directly and through its affiliates and subsidiaries, during the Class Period.

### 3.    The Covestro Defendants[3]

16.    Covestro AG is a German corporation headquartered at Kaiser-Wilhelm-Allee 60, 51373 Leverkusen, Germany. Covestro AG marketed and sold Isocyanates in the United States, directly and through its affiliates and subsidiaries, during the Class Period.

---

[2]    Bayer AG and Bayer Corp. are referred to as the "Bayer Defendants" or "Bayer."

[3]    Covestro AG and Covestro LLC are referred to as the "Covestro Defendants" or "Covestro."

CLASS ACTION COMPLAINT

17.    Covestro LLC is a Delaware corporation located at 1 Covestro Cir., Pittsburgh, Pennsylvania.  Covestro LLC is a wholly-owned subsidiary of Covestro AG. Covestro LLC manufactured, marketed, and sold Isocyanates in the United States, directly and through its affiliates and subsidiaries, during the Class Period.

### 4.    The Dow Defendants[4]

18.    DowDuPont Inc. ("DDP") is a Delaware corporation headquartered at 2030 Dow Center, Midland, Michigan. DDP manufactured, marketed, and sold Isocyanates in the United States, directly and through its affiliates and subsidiaries, during the Class Period.

19.    Dow Chemical Co. ("Dow Chemical") is a Delaware corporation headquartered at 2030 Dow Center, Midland, Michigan. Dow Chemical is a subsidiary of DDP. Dow Chemical manufactured, marketed, and sold Isocyanates in the United States, directly and through its affiliates and subsidiaries, during the Class Period.

### 5.    The Huntsman Defendants[5]

20.    Huntsman Corp. is a Delaware corporation headquartered at 10003 Woodloch Forest Dr., The Woodlands, Texas. Huntsman Corp. manufactured,

---

[4]    DDP and Dow Chemical are referred to as the "Dow Defendants" or "Dow."

CLASS ACTION COMPLAINT

marketed, and sold Isocyanates in the United States, directly and through its affiliates and subsidiaries during the Class Period.

21.    Huntsman International LLC ("Huntsman International") is a Delaware corporation headquartered at 10003 Woodloch Forest Dr., The Woodlands, Texas. Huntsman International is a subsidiary of Huntsman Corp. Huntsman International manufactured, marketed, and sold Isocyanates in the United States, directly and through its affiliates and subsidiaries, during the Class Period.

### 6.    The Mitsui Defendants[6]

22.    Mitsui Chemicals, Inc. ("Mitsui Chemicals") is a Japanese corporation headquartered at Shiodome City Center, 1-5-2 Higashi-Shimbashi, Minato-ku, Tokyo, Japan. Mitsui Chemicals made, marketed, and sold Isocyanates in the United States, directly and through its affiliates and subsidiaries, during the Class Period.

23.    Mitsui Chemicals America, Inc. ("Mitsui Chemicals America") is a Delaware corporation headquartered at 800 Westchester Ave., Suite S306, Rye Brook, New York. Mitsui Chemicals America is subsidiary of Mitsui Chemicals. Mitsui

---

[5]    Huntsman Corp. and Huntsman International are referred to as the "Huntsman Defendants" or "Huntsman."

[6]    Mitsui Chemicals, Mitsui Chemicals America, MCNS, and MCNS USA are referred to as the "Mitsui Defendants" or "Mitsui."

CLASS ACTION COMPLAINT

Chemicals America manufactured, marketed, and sold Isocyanates in the United States, directly and through its affiliates and subsidiaries, during the Class Period.

24.   Mitsui Chemicals & SKC Polyurethanes, Inc. ("MCNS") is a Japanese and Korean company headquartered at 17F-A, Kyobo Tower, 465, Gangnam-daero, Seocho-Gu,Seoul, Korea.  MCNS is a joint venture of Mitsui Chemicals, Inc. and SKC Co, Ltd. MCNS manufactured, marketed, and sold Isocyanates in the United States, directly and through its affiliates and subsidiaries, during the Class Period.

25.   MCNS Polyurethanes USA, Inc. ("MCNS USA") is a Georgia corporation located at 1 SKC Drive, Covington, Georgia.  MCNS USA manufactured, marketed, and sold Isocyanates in the United States, directly and through its affiliates, and subsidiaries, during the Class Period.

### 7.   The Wanhua Defendants[7]

26.   Wanhua Chemical Group Co., Ltd. ("Wanhua Chemical"), is a Chinese corporation headquartered at No. 17, Tianshan Rd, YEDA, Yantai, 264006, China. Wanhua Chemical made, marketed, and sold Isocyanates in the United States, directly and through its affiliates and subsidiaries, during the Class Period.

---

[7]   Wanhua Chemical, Wanhua Chemical America Co., and Wanhua Chemical are referred to as the "Wanhua Defendants" or "Wanhua."

CLASS ACTION COMPLAINT

27.    Wanhua Chemical (America) Co. Ltd. ("Wanhua Chemical America") is a Nevada corporation with its principal place of business at 3803 West Chester Pike, Suite 240, Newtown Square, Pennsylvania. Wanhua Chemical America is a subsidiary of Wanhua Chemical. Wanhua Chemical America manufactured, marketed, and sold Isocyanates in the United States, directly and through its affiliates and subsidiaries, throughout the Class Period.

28.    Wanhua Chemical US Holding, Inc. ("Wanhua Chemical Holding") is a Delaware corporation located at Two Eldridge Place, 757 N. Eldridge Parkway, Suite 560, Houston, Texas. Wanhua Chemical Holding is a wholly-owned subsidiary of Wanhua Chemical and acts as Wanhua Chemical's North American Headquarters. Wanhua Chemical Holding made, marketed, and sold Isocyanates in the United States, directly and through its affiliates and subsidiaries, throughout the Class Period.

## V. AGENTS AND CO-CONSPIRATORS

29.    Each Defendant acted as the principal and agent for each other Defendant as to the common course of conduct described in this complaint.

30.    Various other persons, firms, companies, and corporations not named as Defendants, conspired with Defendants and engaged in conduct that, either directly or indirectly, furthered the alleged conspiracy.

CLASS ACTION COMPLAINT

31.     The acts alleged to have been done by any Defendant or co-conspirator were authorized by its directors, officers, managing agents, employees, or representatives while actively engaged in day-to-day business operations and corporate management. These collusive activities were part of Defendants' corporate DNA.

## VI.     INTERSTATE TRADE AND COMMERCE

32.     Defendants are manufacturers of Isocyanates sold in the United States.

33.     Defendants or their affiliates and subsidiaries produced Isocyanates in either the United States or overseas.

34.     Defendants sold Isocyanates throughout the United States in a continuous and uninterrupted flow of interstate commerce throughout the Class Period.

35.     Defendants' conduct took place within the United States, and has had a direct, substantial, and reasonably foreseeable anticompetitive effect upon interstate commerce.

36.     The conduct alleged in this complaint directly and substantially affected interstate commerce in that Defendants have deprived Plaintiff of the benefits of free and open competition in the purchase of Isocyanates within the United States and caused prices for Isocyanates to be higher than they would have been in the absence of defendants' conspiracy.

CLASS ACTION COMPLAINT

37.     Defendants' overarching agreement to inflate, fix, raise, maintain, or artificially stabilize prices of Isocyanates, and the implementation of that agreement, had a direct, substantial, and reasonably foreseeable effect on United States commerce and on import trade and commerce with the United States.

## VII.   FACTUAL ALLEGATIONS

### A.   Industry Background

38.     Polyurethane chemistry was pioneered by Dr. Otto Bayer fifty years ago. Polyurethanes have become a multi-billion-dollar global industry.

39.     Isocyanates are used in numerous applications, including transportation, interior design, construction, carpeting, textiles, appliances, packaging, and bedding. These uses also include flexible foam for use in furniture, rigid foam used for wall insulation, thermoplastic polyurethane used in medical devices, and CASE products used on automotive interiors.

40.     Total yearly production of MDI exceeds six million tons per year.

41.     Total yearly production of TDI exceeds three million tons per year.

42.     Defendants have had a dominant market share of this multi-billion-dollar market throughout the Class Period.

CLASS ACTION COMPLAINT

**B.**  **Defendants Met and Conspired to Raise Prices and Control Supply.**

43.    Defendants conspired and agreed to fix and maintain the price of Isocyanates throughout the Class Period, principally through coordinated and pretextual supply shut downs.

44.    The conspiracy likely began in 2015, when Defendants began discussing ways to increase prices and constrain the supply of Isocyanates.



45.    Prior to Defendants' collusion, Isocyanates prices were on the decline.

46.    Stating at least as early as 2015, Defendants agreed to artificially maintain and raise prices for Isocyanates by reducing supply. Defendants agreed to continuously rotate chemical plant closings, often using pretextual reasons such as asserting that "force majeure" clauses required them to invalidate prior purchase orders and shut

CLASS ACTION COMPLAINT

down manufacturing plants. These pretextual reasons included supposed raw material shortages or required maintenance. Examples of these pretextual closings include, but are not limited to the following:

- March 2, 2015: Bayer closed its MDI plant in Brazil, which was previously scheduled for July of 2015.

- March 24, 2015 to June 1, 2015: BASF declared force majeure and halted production from its plant in Louisiana.

- April 2015: Huntsman announced the shut-down its plant in Holland to implement operations systems.

- July 2015: Bayer closed its TDI plant in Brunsbuttel, Germany, which it had previously scheduled for September 2015.

- October 2015: Just after Bayer closed its plant in September, Mitsui announced the planned shutdown of its plant in Omuta, Japan scheduled for May 2016, advancing that date from a previously announced date of December 2016.

- November 2015: BASF announced its Isocyanates plant in Louisiana would be closed for maintenance for six weeks starting in February 2016.

- December 2015: Covestro announced the planned shut-down of its plant in Terragona, Spain, scheduled for the end of 2017. Covestro reversed

CLASS ACTION COMPLAINT

this decision in March 2017 when prices for Isocyanates were much higher and supply was low.

- March 2016: Mitsui, which had previously scheduled a shutdown of its Omuta plant for May, accelerated the shutdown date due to equipment defects.

- May 2016: Covestro stopped shipments from its Texas TDI plant.

- June 2016: BASF's TDI plant in South Korea was scheduled for maintenance.

- October to December 2016: Covestro declared force majeure on MDI and TDI production due to supply problems.

- September to November 2016: Wanhua shut down its Yantai, China plant for maintenance.

- April 2017: Covestro shut down production in its Brunsbuttel plant until May 2017.

- May 2017: BASF announced a shut down on MDI production from its Louisiana plant. It shut down TDI production in June 2017.

- May 2017: Wanhua shut down its "first and second phase MDI devices" in its Ningbo factory for an "overhaul" expected to last sixteen days.

CLASS ACTION COMPLAINT

- <u>August 2017</u>: Wanhua's BorsodChem European subsidiary announced a force majeure on production of MDI from its plant in Kazincbarcika, Hungary due to a supposed technical problem.

- <u>December 2017</u>: BASF shut down MDI production in its Chongquing, China plant due to a claimed material supply shortage.

- <u>December 1, 2017</u>: Wanhua again shut down its MDI production in its Ningbo factory on December 1, 2017 (phase one) and December 16, 2017.

- <u>January 24, 2018</u>: Dow announced shut down on MDI production from its Texas plant due to inclement weather.

- <u>January 25, 2018</u>: BASF announced a force majeure on MDI production in the United States, and, one week later, announced the force majeure on United States production of TDI.

47.    These plant closures were not necessary and are not standard practice in the Isocyanates industry.  Market reports noted the uncertain nature of these outages and their impact on Isocyanates's prices.

48.    Defendants' control and limitation of the Isocyanates supply allowed them to implement price increases with no danger of any push back from Isocyanates purchasers.

CLASS ACTION COMPLAINT

49.     The supply of Isocyanates is generally considered in global terms. Shutdowns of non-U.S. plants can affect supply and price of Isocyanates available domestically. For example, Defendants buy Isocyanates from one another in times of tight supply in the spot market. Thus, reduced supply by one Defendant affects the supply from purchases of other Defendants. Purchasing Isocyanates from one another also allowed Defendants to further collaborate and police their pricing agreements by giving them additional opportunities to make competitor contacts.

## C.     **Defendants Price Increases Were Coordinated.**

50.     Defendants implemented price increases on Isocyanates in unison through collusion.

51.     Price increase announcements from Defendants show a distinct pattern of near-simultaneous increases on Isocyanates:

- March 17-30, 2016: Dow, BASF, and Wanhua announced price increases on MDI and TDI the same day.

- May 13-16, 2016: Dow, BASF, and Wanhua announced price increases the same week.

- October 7-13, 2016: Dow, BASF, and Wanhua announced price increases on TDI the same week.

CLASS ACTION COMPLAINT

- <u>December 9-19, 2017</u>: Dow, BASF, and Wanhua announced price increases on MDI within days of each other.

- <u>January 13-23, 2017</u>: Dow, BASF, and Wanhua announced price increases on TDI within days of each other.

- <u>March 20-21, 2017</u>: BASF announced a price increase on MDI and TDI, and Dow announced a TDI price increase the next day.

52.     These price increases are not consistent with parallel conduct. Rather, they suggest coordinated conduct.

53.     The inflated Isocyanates pricing is not consistent with the functioning of a competitive market. In a competitive market, rival firms would set their prices above their costs but below the price of their less efficient rivals. This did not happen here. Instead, Defendants raised their prices unchecked by competitive forces.

**D.    <u>DOJ Investigation.</u>**

54.     On June 8, 2018, it was reported that several Isocyanates manufacturers were under investigation by the DOJ for price fixing. Covestro confirmed that it had been contacted by the DOJ regarding the investigation, and that it planned to cooperate with the authorities.

CLASS ACTION COMPLAINT

55.    On June 11, 2018, BASF confirmed that it had also received a subpoena from the DOJ, along with "several other companies," related to an investigation into MDI and alleged violation of antitrust laws.

56.    Defendants are repeat violators of the antitrust laws that have communicated and fixed prices in this same industry in the past. Many of these Defendants were subjects of prior governmental investigations and civil lawsuits regarding price-fixing of polyester and polyether urethanes from 1995 to 2009. Those lawsuits resulted in massive verdicts and civil settlements, including a $1.1 billion jury verdict against Dow which was ultimately settled for $835 million prior to appeal to the Supreme Court. *See In re Urethane Antitrust Litig.*, Case No. 04-md-01616 (D. Kan). Bayer Corporation paid a criminal fine of $33 million.

**E.    Plus Factors Demonstrate That The Isocyanates Market is Conducive to Price Fixing.**

57.    The Isocyanates market is susceptible to collusive activity due to many plus factors.

58.    Isocyanates are highly commodified products. Isocyanates are a chemical compound, and any manufacturer's Isocyanates could be substituted for another. Isocyanates are commodities. Therefore, price hikes would be difficult to institute and maintain without collusion, and competitors could quickly undercut price hikes.

CLASS ACTION COMPLAINT

59.     The Isocyanates market is highly concentrated.  Given Defendants' market share, they could successfully raise prices through coordinated efforts. Defendants collectively control approximately 90% of the global production of Isocyanates.

60.     There are significant barriers to entry in the Isocyanates market. For example, Isocyanates production requires sophisticated, expensive chemical plants and a high-degree of specialization. Building factories requires a significant financial outlay and the acquisition of personnel with technical expertise.

61.     The dominant manufacturers in the Isocyanates industry benefit from economies of scale that have established their reliability regarding the manufacture of this chemical. A prospective entrant into the industry would have to invest an enormous amount of money and would face a long wait time before gaining any return on its investment.

62.     There is inelasticity of demand in the Isocyanates market. Isocyanates are necessary components to produce polyurethane products and there are no substitutes. As a matter of general economic principle, an industry with inelastic demand is more susceptible to price-fixing.  What this means is that demand likely will not decline even when prices rise.  Thus, Defendants can raise and maintain pricing without losing sales, thereby generating artificially high profits.

CLASS ACTION COMPLAINT

F.    **Trade Associations Provided Opportunities for Competitor Contacts**

63.    Defendants are also members of multiple trade associations, which created the opportunity to conspire.  Those trade associations including the following:

- The American Chemistry Council

- The Center for Polyurethanes Industry

- The Composite Panel Association

- The European Diisocyanate & Polyol Producers Association ("ISOPA")

- International Isocyanate Institute

- The Polyurethane Manufacturers Association

- The Spray Foam Coalition

64.    These trade associations provided ample opportunities for Defendants to meet and conspire in secret. Many of these trade associations have an extremely limited membership—for example, the ISOPA lists only six members, five of which are Defendants or Defendant subsidiaries.

## VIII.  PLAINTIFF'S CLAIMS ARE NOT LIMITED BY THE STATUTES OF LIMITATION

65.    Plaintiff had neither actual nor constructive knowledge of Defendants unlawful conduct until reports of the DOJ investigation surfaced. Nor did Plaintiff have any reason to suspect that Defendants were conspiring to fix Isocyanates prices.

CLASS ACTION COMPLAINT

At no point did Defendants inform Plaintiff that their products were not being priced competitively but were rather the result of a price-fixing agreement. This information was suppressed by Defendants' anticompetitive agreements and the secretive practices inherent in negotiating those agreements.

66.    Defendants fraudulently concealed their unlawful conduct from discovery by Plaintiff throughout the Class Period.  Defendants used pretextual excuses for pricing increases, output levels, and supply constraints. These pretextual justifications were intended to and did mislead Plaintiff throughout the Class Period. Plaintiff was unaware of Defendants' unlawful conduct and did not know that it was paying artificially high prices for Isocyanates, because the conspiracy was actively concealed until June 8, 2018.

67.    Defendants attempted to falsely attribute price increases of Isocyanates purchased by Plaintiff to supply constraints when supply was actually intentionally limited by the Defendants through, among other things, pretextual plant closures and shutdowns.

68.    Defendants sought to keep their meetings secret and did not create official records.

69.    Such conspiracies are self-concealing. Defendants often had discussions in private meetings or through email exchanges. Defendants also relied on non-public

CLASS ACTION COMPLAINT

forms of information (e.g. private email and personal cell phones) to exchange information and to avoid disclosure of the full scope of the conspiracy.

70.    None of the relevant communications between Defendants were public or could have been known to Plaintiff prior to the DOJ investigation.

71.    Defendants' conspiracy was fraudulently concealed by numerous means, including, secret meetings, trade association meetings (both formal and informal), misrepresentations to customers, and secret communications used to prevent the existence of written records.

72.    Defendants agreed not to discuss their agreements publicly.

## IX.    CLASS ACTION ALLEGATIONS

73.    Tri-iso brings this action on behalf of itself and the Class identified below pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure (the "Class"):

> All persons and entities that directly purchased Isocyanates within the United States, its territories and the District of Columbia from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2015 through the present. Excluded from the class are governmental entities, Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and immediate families.

74.    Tri-iso does not know the exact number of members of the Class, because such information is in the exclusive control of Defendants. Due to the nature of the

trade and commerce involved, however, Class Members likely number at least in the thousands and are sufficiently numerous and geographically dispersed throughout the United States, its territories, and the District of Columbia so that joinder of all Class Members is impracticable.

75.    There are questions of law and fact which are common to the claims of Plaintiff and the Class, including, but not limited to the following:

     a.    Whether Defendants engaged in a combination or conspiracy with their co-conspirators to fix, raise, maintain, or stabilize the prices for Isocyanates;

     b.    Whether the purpose or effect of the acts and omissions alleged herein was to restrain trade, or to affect, fix, control, or maintain the prices for Isocyanates;

     c.    The existence and duration of the horizontal agreements alleged herein to fix, raise, maintain, or stabilize the prices for Isocyanates;

     d.    Whether Defendants violated the Sherman Act;

     e.    Whether Defendants' agents, officers, employees, or representatives took acts in furtherance of the illegal conspiracy alleged herein, and, if so, whether such agents, officers, employees,

CLASS ACTION COMPLAINT

or representatives were acting within the scope of their authority when they took those acts;

f.    Whether Defendants' conduct caused injury to Plaintiff and the Class, and, if so, the appropriate measure of damages; and

g.    Whether Plaintiff and the Class are entitled to injunctive relief to prevent the continuation or furtherance of the violation of Sherman Act Sections 1 and 3.

76.    Plaintiff's claims are typical of the claims of the members of the Class.

77.    Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of the Class.

78.    Plaintiff is represented by counsel competent and experienced in the prosecution of antitrust and class action litigation.

79.    The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members.

80.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because:

a.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

CLASS ACTION COMPLAINT

b.     The Class is readily definable and one for which records should exist in the files of Defendants.

c.     Prosecution as a class action will eliminate the possibility of repetitious litigation.

d.     Treatment as a class action will permit many similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would require.

e.     Class treatment will permit the adjudication of relatively small claims by many Class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this complaint on an individual basis.

81.    This class action presents no difficulties of management that would preclude its maintenance as a class action.

## X. <u>COUNT I: VIOLATION OF THE SHERMAN ACT §§ 1 AND 3</u>

82.    Plaintiff incorporates all allegations alleged herein.

83.    Defendants and their co-conspirators entered into, and engaged in, a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act; 15 U.S.C. §§ 1, 3.

CLASS ACTION COMPLAINT

84.    Defendants' anticompetitive acts were intentionally directed at the United States Isocyanates market and had a substantial and foreseeable effect on interstate commerce by raising and fixing Isocyanates' prices throughout the United States.

85.    The contract, combination, or conspiracy had the following direct, substantial, and reasonably foreseeable effects upon commerce in the United States and upon import commerce:

a.    Prices charged to and paid by Plaintiff and the Class for Isocyanates were artificially raised, fixed, maintained, or stabilized at supra-competitive levels;

b.    Plaintiff and Class Members were deprived of the benefits of free, open, and unrestricted competition in the United States Isocyanates market; and

c.    Competition in establishing the prices paid for Isocyanates has been unlawfully restrained, suppressed, or eliminated.

86.    Defendants and their co-conspirators' anticompetitive activities have directly and proximately caused injury to Plaintiff and members of the Class in the United States.

87.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class paid artificially inflated prices for Isocyanates.

88.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class were damaged in their business or property by

CLASS ACTION COMPLAINT

paying prices for Isocyanates that were higher than they would have been but for Defendants' unlawful conduct, which has resulted in an amount of ascertainable damages to be established at trial.

## XI.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays that the Court:

A.    Rule that this action may be maintained as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, should be given to members of the Class;

B.    Rule that Defendants' unlawful contract, combination, or conspiracy constitutes a *per se* violation of Sherman Act Sections 1 and 3;

C.    Rule that each Defendant, and its affiliates and subsidiaries as well as their  respective officers, directors, agents, managing agents, and employees, and all other persons acting or claiming to act on behalf of any of them or in concert with them, be permanently enjoined and restrained from in any manner, directly or indirectly, continuing, maintaining, or renewing the combination, conspiracy, agreement, understanding, or concert of action, or adopting any practice, plan,

CLASS ACTION COMPLAINT

program, or design having a similar purpose or effect in restraining competition in the United States Isocyanates market;

D.     Enter judgment against Defendants, jointly and severally, in favor of Plaintiff and the Class for treble damages determined to have been sustained by Plaintiff and the Class by virtue of Defendants and their co-conspirators' violations of the Sherman Act;

E.     Award Plaintiff and the Class their attorneys' fees, litigation expenses, and court costs, as well as pre-judgment and post-judgment interest as permitted by United States law; and

F.     Grant Plaintiff and the Class such other and further relief, including injunctive relief as the case may require, or as the Court deems just and proper under the circumstances.

CLASS ACTION COMPLAINT

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  September 19, 2018

*s/ Steven N. Williams*

Steven N. Williams
Joseph R. Saveri (*pro hac vice forthcoming*)
Kyla J. Gibboney (*pro hac vice forthcoming*)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone:  (415) 500-6800
Facsimile:    (415) 395-9940
*swilliams@saverilawfirm.com*
*jsaveri@saverilawfirm.com*
*kgibboney@saverilawfirm.com*

CLASS ACTION COMPLAINT